# IN THE COURT OF APPEALS OF IOWA

No. 13-1974
Filed September 17, 2014

**MICHAEL SUTCLIFFE, D.O.,**
    Plaintiff-Appellee,

**vs.**

**MERCY CLINICS, INC.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Mercy Clinics, Inc. appeals from the district court's ruling denying its motion to compel arbitration. **REVERSED AND REMANDED.**

Michael R. Reck and Espnola F. Cartmill of Belin McCormick, P.C., Des Moines, and Jay M. Dade and Jennifer R. Growcock of Polsinelli, P.C., Springfield, Missouri, for appellant.

J.D. Hartung of Hartung & Schroeder LLP, Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

Mercy Clinics, Inc. appeals from the district court's ruling denying its motion to compel arbitration on a breach of contract action, claiming the arbitration provision in its employment contract with Michael Sutliffe, D.O., is enforceable pursuant to the Federal Arbitration Act. Because it is undisputed the Mercy clinic at which Dr. Sutcliff practiced treated Medicare patients, the record establishes the interstate commerce nexus required to trigger application of the FAA to this employment contract. We therefore reverse the district court's ruling denying Mercy's motion to compel arbitration and remand for further proceedings consistent with this opinion.

## I. *Background Facts and Proceedings*

Dr. Michael Sutliffe, a licensed family practitioner, worked for Mercy Clinics, Inc. for many years. In 2010, Dr. Sutliffe entered an agreement with Mercy to provide medical services at the Mercy Indianola Jefferson Medical Clinic commencing January 2011. In order to induce Dr. Sutliffe to work at the newly constructed clinic, Mercy apparently made an oral agreement with Dr. Sutliffe to provide compensation in addition to that set forth in the written agreement.[1] The additional compensation was to be provided to each physician practicing in the clinic until the clinic had twelve or more physicians. Based on this promise, Dr. Sutliffe agreed to practice medicine at the clinic. Although the twelve-physician threshold was never met, Dr. Sutliffe did not receive additional compensation.

---

[1] For purposes of this ruling, we make no finding whether or not the alleged oral agreement existed.

In June 2013, Dr. Sutliffe filed a petition claiming, in part,[2] breach of contract due to Mercy's failure to pay the prorated compensation as promised in the oral agreement. Mercy filed a motion to dismiss or, in the alternative, compel arbitration. Dr. Sutliffe's written agreement with Mercy included, among other provisions, the following arbitration clause:

> Arbitration. Any dispute regarding (i) any aspect of the Agreement, (ii) any act which allegedly has or may violate any provision of the Agreement, or (iii) any dispute related to the employment relationship between the parties or the termination of that relationship shall be submitted to binding arbitration in Des Moines, Polk County, Iowa before a mutually acceptable arbitrator, as the exclusive remedy for such claim or dispute. The arbitration shall be in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration ("AHLA Arbitration Procedures") to the extent such procedures are not in conflict with the Agreement. Disputes subject to arbitration include, but are not limited to, all employment-related claims arising under state or federal statutes, common law torts, and contract claims. . . .

Dr. Sutliffe resisted Mercy's motion.

Following a hearing, the district court entered a ruling denying Mercy's motion. The court observed, "The question of whether the arbitration clause—applicable to the entire agreement between the parties—can be enforced hinges on the applicability of the Federal Arbitration Act (FAA) to the current set of facts." However, the court found the FAA inapplicable because the contract "fail[ed] to satisfy the interstate commerce nexus." Specifically, the court found the contract, "formed in Iowa, for the practice of medicine in Iowa, [failed] the interstate commerce requirement of the FAA." Finding the FAA inapplicable, the

---

[2] Dr. Sutliffe's petition also raised claims requesting declaratory judgment (Count I) and temporary and permanent injunction (Count II). Only Dr. Sutliffe's breach-of-contract claim (Count III) is at issue on appeal.

court turned to Iowa Code section 679A.1 (2013), which excludes contracts "between employers and employees" from mandatory arbitration. The court therefore found the arbitration clause to be unenforceable. Mercy appeals.[3]

## II. Standard of Review

The denial of a motion to compel arbitration is a final judgment for purposes of appeal. *See* Iowa Code § 679A.17(1)(a); *Heaberlin Farms, Inc. v. IGF Ins. Co.*, 641 N.W.2d 816, 817 (Iowa 2002). Our review is for the correction of errors of law. *Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 29 (Iowa 1999).

## III. Analysis

At issue in this case is whether the arbitration provision contained in the employment contract between Dr. Sutliffe and Mercy is enforceable under the Federal Arbitration Act, 9 U.S.C. § 2. The FAA is applicable to employment contracts. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). By excluding "contract[s] between employers and employees," the Iowa statute is in conflict with the FAA. *See* Iowa Code § 679A.1; *Heaberlin Farms*, 641 N.W.2d at 819. "Thus, if the federal act is applicable, it preempts the Iowa statute by operation of the Supremacy Clause." *Heaberlin Farms*, 641 N.W.2d at 819; *see also Rent-A-Ctr., Inc. v. Iowa Civil Rights Comm'n*, 843 N.W.2d 727, 733 (Iowa 2014) ("[T]he provisions of the FAA apply in state courts and preempt inconsistent state laws."). The district court determined the FAA is not applicable

---

[3] Dr. Sutliffe did not file a brief on appeal.

here because this contract "fails to satisfy the interstate commerce nexus."[4] That is the specific question before us.

"[U]nder the FAA, parties who have contracted to arbitrate claims arising between them are bound to do so." *Rent-A-Ctr., Inc.*, 843 N.W.2d at 732. The FAA provides:

> A written provision in any . . . contract *evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). "The FAA has been interpreted to be very broad in its scope" and "questions as to whether an issue is arbitrable are to be resolved in favor of arbitration." *Heaberlin Farms*, *Inc.*, 641 N.W.2d at 818 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23 (1983)). The party seeking to compel FAA arbitration must show the existence of a written agreement which contains an arbitration clause and involves interstate commerce. *See id.* at 818-19. The existence of a written contract containing an arbitration clause is not at issue here; rather, the question is whether Mercy made the requisite showing that its agreement with Dr. Sutliffe involves interstate commerce.

---

[4] The district court cited *United States. v. Oregon State Medical Society*, 95 F. Supp. 103, 118 (D. Or. 1950) ("The practice of medicine as conducted within the State of Oregon by doctors of Oregon . . . is not . . . commerce within the meaning of the constitutional grant of power to Congress '[t]o regulate commerce . . . among the several States.'" (citing U.S. Const. art. I, § 8, cl. 3)).

The FAA term "involving commerce" has been interpreted as "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *see* William M. Howard, *When Does Contract Evidence Transaction Involving Interstate Commerce Within Meaning of Federal Arbitration Act (FAA)—Legal Issues & Principles*, 10 A.L.R. Fed. 2d 489 (2006) (reviewing cases). "Because the statute provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause, . . . the FAA encompasses a wider range of transactions than those actually in commerce—that is, within the flow of interstate commerce." *Citizens Bank*, 539 U.S. at 56 (internal citation and quotation marks omitted); *Cicle v. Chase Bank USA*, 583 F.3d 549, 553-54 (8th Cir. 2009) (observing the FAA "reflects congressional intent to overcome judicial hostility to arbitration agreements" and stating that "[d]oubts are resolved in favor of arbitrability").

The employment contract at issue here was formed in Iowa, between parties in Iowa. Under the contract, Dr. Sutcliffe was to provide professional medical services in Iowa. The contract, on its face, does not appear to involve interstate commerce. On appeal, Mercy points us to a raft of out-of-state cases to support its proposition that health-related services affect interstate commerce with regard to application of the FAA.[5] These cases primarily involve agreements

---

[5] It would have been helpful if Mercy had provided us with pinpoint citations to these cases. *See* Iowa R. App. P. 6.904(2)(a) ("[When] referring to a particular point within an authority, the specific page or pages . . . relied upon shall be given in addition to the required page references.").

with hospitals, medical groups, and nursing homes. In finding the requisite interstate commerce nexus was satisfied, all the courts relied on evidence of different types of information such as: acceptance of out-of-state and multi-state insurer reimbursements; purchase and receipt of goods, equipment, medication, and services from out-of-state vendors; out-of-state corporate offices; recruitment of physicians from out-of-state; service to out-of-state patients; and receipt of federal funds, such as Medicare reimbursements. *See e.g.*, *Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So. 2d 661, 668 (Ala. 2004); *Triad Health Mgmt. of Georgia, III, LLC v. Johnson*, 679 S.E.2d 785, 787-88 (Ga. Ct. App. 2009), *Fosler v. Midwest Care Ctr. II, Inc.*, 928 N.E.2d 1, 14-15 (Ill. Ct. App. 2009); and *In re Tenet Healthcare*, Ltd., 84 S.W.3d 760, 765 (Tex. Ct. App. 2002).

Indeed, the Mercy clinic may generate revenue from out-of-state and multi-state insurance companies. Its physicians may use out-of-state supplies, medicine, and equipment to provide services to its patients. Its physicians may receive continuing medical training via out-of-state programs and materials. Evidence of these factors, as well as others mentioned in the cases cited above, would have been helpful in determining the applicability of the FAA to this contract, but no such evidence was made part of this record.

Nevertheless, there is no dispute between the parties that Medicare patients were treated at Mercy's Indianola clinic, the clinic at which Dr. Sutcliffe was contracted to provide professional medical services. Receipt of Medicare reimbursements involves interstate commerce. *Summit Health Ltd. v. Pinhas*, 500 U.S. 322, 327 (1991) ("The provision of [medical services] affects interstate commerce because both physicians and hospitals serve nonresident patients

and receive reimbursement through Medicare payments."); *see also GGNSC Louisville Hillcreek, LLC v. Warner*, No 3:13-cv-751, 2013 WL 6796421, at *8 (W.D. Ky. Dec. 19, 2013) ("The receipt of Medicare and Medicaid funds are transactions involving commerce and may by themselves establish the appropriate interstate commerce nexus. [The nursing home] has a nexus with interstate commerce through their and their patients' participation in Medicare and Medicaid." (citing *Summit*, 500 U.S. at 327)); *Glover ex rel. Glover v. Darway Elder Care Rehab. Ctr.*, No. 4:13-CV-1874, 2014 WL 931459, at *6 (M.D. Pa. Feb. 4, 2014) (observing receipt of Medicare payments alone "would appear to satisfy that 'involving interstate commerce' requirement, and indeed numerous courts have found that this very payment activity satisfies the requirement" (listing cases)); *Visiting Nurse Ass'n of Florida, Inc. v. Jupiter*, ___ So. 3d ___, ___, No. SC11-2468, 2014 WL 3360314, at *7 (Fla. 2014) ("[R]eferral of Medicare patients was contemplated and occurred as part of the transaction. Thus, this transaction in fact involved interstate commerce and is subject to the FAA."); *Miller v. Cotter*, 863 N.E.2d 537, 544 (Mass. 2007) ("In addition, and more specifically, accepting payment from Medicare, a Federal program (which there was some evidence here), constitutes an act in interstate commerce." (citing *Summit*, 500 U.S. at 327)); *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) ("Because 'commerce' is broadly construed, the evidence of Medicare payments . . . is sufficient to establish interstate commerce and the FAA's application in this case."); *but see Bruner v. Timberlane Manor Ltd. P'ship*, 155 P.3d 16, 28 (Okla. 2006) ("We decline to join Alabama, Mississippi and Texas in treating the federal distribution of medicare insurance

funds and state distribution of federal-state-matching medicaid funds as indicia of commerce that triggers the FAA.").[6] The United States Supreme Court and the Iowa Supreme Court have not required a minimum number of interstate ties, but rather, have interpreted the impact of the FAA broadly based on Congress' power under the Commerce Clause. *See, e.g.*, *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 269 (1995), *Heaberlin Farms*, 641 N.W.2d at 818, 823.

Despite the lack of evidence in this record of activities commonly relied upon to establish interstate commerce involvement for FAA purposes, there is no dispute that the Mercy clinic at issue treats Medicare patients. We therefore conclude the "involving interstate commerce" requirement is satisfied and application of the FAA is triggered. Consequently, the district court erred in denying Mercy's application to compel arbitration. We therefore reverse and remand.

**REVERSED AND REMANDED.**

---

[6] Courts have interpreted the Oklahoma Supreme Court's decision in *Bruner* as an outlier on this issue. *See, e.g.*, *Glover*, 2014 WL 931459, at *7 ("The only authority the plaintiff offers for the proposition that receipt of Medicare payments does not implicate interstate commerce comes from a 2008 decision of the Oklahoma Supreme Court [in *Bruner*]. . . . In addition to the fact that this portion of *Bruner* is plainly *dicta* and of little persuasive value, we also recommend that the Court decline to follow or rely upon *Bruner*'s analysis of this issue, as it in direct conflict with the well reasoned and persuasive decisions cited above."); *Wallin v. Cannon*, No. 110404750, 2011 WL 7416973, at n.1 (D.C. Utah 2011) ("[T]he Oklahoma Supreme Court [decision in] *Bruner* appears to be in the small minority and has rarely been followed by other jurisdictions.").