Filed 10/19/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CRESTWOOD BEHAVIORAL HEALTH, INC.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEEVERIA LACY,<br><br>    Defendant and Respondent;<br><br>LILIA GARCÍA-BROWER, as Labor Commissioner, etc.,<br><br>    Movant and Appellant. | A158830<br><br>(City and County of San Francisco Super. Ct. No. CPF-19-516552) |

Deeveria Lacy, a former employee of respondent Crestwood Behavioral Health, Inc. (Crestwood), filed a retaliation complaint against Crestwood with appellant Lilia Garcia-Brower, in her official capacity as the California Labor Commissioner (Labor Commissioner or Commissioner), pursuant to Labor Code section 98.7, subdivision (a).[1] After the Commissioner notified Crestwood of its investigation of Lacy's complaint, Crestwood filed a petition to compel arbitration against Lacy but did not include the Commissioner as a

---

[1] The Division of Labor Standards Enforcement (DLSE), headed by the Labor Commissioner, "is the state agency empowered to enforce California's labor laws." (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561–562.) Throughout the opinion, we use the terms Labor Commissioner, Commissioner, and DLSE interchangeably.

In addition, all further statutory references are to the Labor Code unless otherwise indicated.

1

party.  In granting the petition, the trial court not only compelled Lacy to arbitrate her retaliation complaint, it also stayed the Commissioner's investigation pending the completion of that arbitration.

Approximately 100 days after Crestwood alerted her to the trial court's ruling, the Labor Commissioner moved ex parte to intervene so she could vacate the order.  After requiring the Commissioner to file a noticed motion, the trial court denied her motion to intervene because it was untimely and because the order staying the Commissioner's investigation did not impair or impede her ability to protect her interest in Lacy's retaliation complaint.  As a result, the court denied the Commissioner's motion to vacate that order as moot.  We conclude that the motion to intervene was timely and that the order staying the Commissioner's investigation impaired her ability to vindicate the public interest.  We therefore reverse.

## BACKGROUND

Crestwood is a provider of mental health services.  Lacy worked in Crestwood's San Francisco facility as a recovery coach.  When Lacy joined Crestwood, she signed and agreed to Crestwood's "Dispute Resolution & Arbitration" policy (arbitration policy).  Under that policy, "Crestwood, as well as every employee of Crestwood, agree to submit unresolved employment-related legal disputes to an impartial, objective individual called an arbitrator. . . .  [¶]  Arbitration is agreed to in lieu of a civil action before a judge or jury, and the arbitrator's decision is final and binding."  (Some underlining omitted.)

Crestwood terminated Lacy after she allegedly complained to a co-worker about being assaulted on the job.  On January 7, 2019, Lacy filed a retaliation complaint against Crestwood with the Labor Commissioner.  The Commissioner accepted the complaint and began an investigation pursuant

2

to section 98.7, subdivision (a). On January 22, 2019, the Commissioner sent a letter, notifying Crestwood of Lacy's complaint and the Commissioner's investigation of that complaint.

After contacting Lacy and her attorney to inform them of its intent to arbitrate, Crestwood also informed the Labor Commissioner about the arbitration policy. The Commissioner responded that it was not bound by the policy and that it would continue to investigate Lacy's complaint.

Crestwood then filed a "Petition to Compel Arbitration and for a Stay of DLSE Proceedings" (petition). On February 25, 2019, Crestwood's attorney notified the Labor Commissioner of this petition "to compel Ms. Lacy to arbitrate issues she asserted in" her retaliation complaint. The Commissioner agreed to suspend her investigation of Lacy's complaint pending a ruling on the petition by the trial court. Crestwood did not, however, provide the Commissioner with a copy of the petition itself or inform the Commissioner that it was moving for a stay of all DLSE proceedings, including the investigation.

Lacy opposed the petition, arguing that: (1) Crestwood failed to provide Lacy with notice of its intent to arbitrate; (2) the Labor Commissioner had jurisdiction over her retaliation claims under sections 6307 and 6312; and (3) the cases cited by Crestwood only applied to collective bargaining agreements. The trial court granted the petition and "stayed" "the DLSE proceedings . . . pending the arbitration of" Lacy's claims (arbitration order). On April 22, 2019, Crestwood sent a copy of the arbitration order to the Commissioner by email and regular mail.

On July 31, 2019, the Labor Commissioner filed an ex parte application for leave to intervene so it could move to vacate the arbitration order. The trial court denied the application because there were no grounds for ex parte

3

relief and "advised the Commissioner to file a noticed motion" to intervene. The Commissioner then filed a motion for leave to intervene (intervention motion) and a motion to vacate or, in the alternative, for reconsideration (motion to vacate) on August 12, 2019.

The trial court denied the intervention motion. First, the court found the motion untimely. According to the court, the Labor Commissioner "was placed on notice on February 25, 2019 that Crestwood had filed a petition to compel arbitration of" Lacy's claims, "which were then pending solely before the Commission . . . . In response, the Commissioner voluntarily suspended her investigation pending the Court's resolution of that petition. The Court granted the petition on April 17, 2019, fully resolving the entire matter before it. Although the Commissioner evidently had a later change of heart, her motion, filed on August 12, comes several months too late."

Second, the court found that the arbitration order did not impair or impede the Labor Commissioner's ability to protect her interest in Lacy's retaliation complaint. (Code Civ. Proc., § 387, subd. (d)(1)(B).) According to the court, "nothing in" its "order granting Crestwood's petition to compel arbitration precludes the Commissioner from exercising" its statutory powers under section 98.7. "Rather, it is a question of timing and priority" because the order only stays the Commissioner's "investigation . . . pending the conclusion of the contractually agreed-upon arbitration."

Finally, the court held that, under *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109 (*Sonic II*), the arbitration policy supplanted the Labor Commissioner's authority to investigate and act on Lacy's retaliation complaint under sections 98.7 and 98.74. Otherwise, "employees who are parties to binding arbitration agreements could routinely circumvent those agreements, or at the very least 'impose significant delays in the

4

commencement of arbitration,' by filing complaints with the Labor Commissioner." In reaching this conclusion, the court found that *Preston v. Ferrer* (2008) 552 U.S. 346 (*Preston*), rather than *Equal Employment Opportunity Com. v. Waffle House* (2002) 534 U.S. 279 (*Waffle House*), controlled.

Because it denied the intervention motion, the trial court took the motion to vacate "off calendar as moot." The Labor Commissioner timely appealed. (See *Noya v. A.W. Coulter Trucking* (2006) 143 Cal.App.4th 838, 841 ["An order denying a motion to intervene is appealable when it finally and adversely determines the right of the moving party to proceed in the action"].)

## DISCUSSION

## I.

### The Intervention Motion

Mandatory intervention is governed by Code of Civil Procedure section 387, subdivision (d)(1)—which "should be liberally construed in favor of intervention." (*Simpson Redwood Co. v. State of California* (1987) 196 Cal.App.3d 1192, 1200.). Under that section, "a party's proposed intervention must be timely." (*Lofton v. Wells Fargo Home Mortgage* (2018) 27 Cal.App.5th 1001, 1012 (*Lofton*).) If timely, then the proposed intervenor, to establish mandatory intervention under subdivision (d)(1)(B),[2] must show (1)

---

[2] Code of Civil Procedure section 387, subdivision (d)(1)(B) states in relevant part that "[t]he court shall, upon timely application, permit a nonparty to intervene in the action or proceeding if . . . [¶] . . . [¶] (B) The person seeking intervention claims an interest relating to the property or transaction that is the subject of that action and that person is so situated that the disposition of the action may impair or impede the person's ability to protect the interest, unless that person's interest is adequately represented by one or more of the existing parties."

" 'an interest relating to the property or transaction which is the subject of the action' " (*Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1423 (*Siena Court*); italics omitted); (2) "he or she 'is so situated that the disposition of the action may as a practical matter impair or impede' " his or her " 'ability to protect that interest' " (*id.* at p. 1424); and (3) he or she is not " 'adequately represented by the existing parties' " (*ibid.*).

Code of Civil Procedure "[s]ection 387 was modeled after and is 'virtually identical' to rule 24 of the Federal Rules of Civil Procedure." (*Ziani Homeowners Assn. v. Brookfield Ziani LLC* (2015) 243 Cal.App.4th 274, 280–281 (*Ziani*); see *Siena Court, supra*, 164 Cal.App.4th at p. 1423 [Code of Civil Procedure section 387, subdivision (d)(1) " 'is in substance the exact counterpart to rule 24(a) of the Federal Rules of Civil Procedure' "].) Thus, "[i]n assessing [the] requirements" for mandatory intervention, "we may take guidance from federal law." (*Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 732 (*Edwards*).)

The Labor Commissioner moved for mandatory intervention under Code of Civil Procedure section 387, subdivision (d)(1)(B). Crestwood does not appear to dispute that the Commissioner has an interest relating to the transaction which is the subject of this action. Nor could it. The arbitration order, by staying all DLSE proceedings relating to Lacy's retaliation complaint, bars the Commissioner from taking any further action under section 98.7 pending the arbitration. Crestwood also does not claim the Commissioner is adequately represented by itself or Lacy. Instead, Crestwood contends the intervention motion was not timely and the arbitration order did not impair or impede the ability of the Commissioner to protect her interest in the complaint. Because both contentions lack merit, we reverse the denial of the intervention motion.

## A.

### *Standard of Review*

Under California and federal cases, a "determination of the timeliness of intervention" is reviewed "for an abuse of discretion." (*Lofton, supra,* 27 Cal.App.5th at p. 1012; see *Smith v. Los Angeles Unified School Dist.* (9th Cir. 2016) 830 F.3d 843, 853 (*Smith*) ["timeliness determination is reviewed for abuse of discretion"].)  But "California cases are not settled on whether we review the denial of a request for mandatory intervention pursuant to [Code of Civil Procedure] section 387 de novo or for abuse of discretion." (*Edwards, supra,* 29 Cal.App.5th at p. 732; see *Siena Court, supra,* 164 Cal.App.4th at p. 1425 [citing cases].)  Nor are federal cases.  (Compare *Smith,* at p. 853 ["A lower court's denial of a motion to intervene is reviewed *de novo*"] with *Benjamin v. Dept. of Public Welfare of the Commonwealth of Pa.* (3d Cir. 2012) 701 F.3d 938, 947 (*Benjamin*) ["This Court reviews 'a district court's denial of . . . intervention of right for abuse of discretion"].)  We, however, need not decide which standard to apply here, because reversal is warranted under either.

## B.

### *Timeliness*

The trial court found that the Labor Commissioner's intervention motion, "filed on August 12," 2019, came "several months too late" because she had notice of the petition "on February 25, 2019."  Crestwood contends the court did not abuse its discretion in so finding because the Commissioner provided no explanation for the delay and because Crestwood and Lacy have suffered prejudice.  We disagree.

"Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: '(1) the stage of

the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the delay.' " (*Smith*, *supra*, 830 F.3d at p. 854.) " '[D]elay in itself does not make a request for intervention untimely. ' " (*Kane County, Utah v. United States* (10th Cir. 2019) 928 F.3d 877, 891.) When mandatory intervention "is sought, because 'the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.' " (*Lopez-Aguilar v. Marion County Sheriff's Dept.* (7th Cir. 2019) 924 F.3d 375, 388–389; see *Benjamin*, *supra*, 701 F.3d at p. 948 ["There is a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor may be seriously harmed if not allowed to intervene"].)

Although the totality of the circumstances should be considered, "prejudice to existing parties is 'the most important consideration in deciding whether a motion for intervention is timely.' " (*Smith*, *supra*, 830 F.3d at p. 857.) This does not, however, include prejudice that would result from allowing intervention. (*Ibid.*) Rather, only the " 'prejudice caused by the movant's delay' " should be considered. (*Kane County*, *supra*, 928 F.3d at p. 891.) Indeed, California courts have found intervention to be timely based solely on the absence of such prejudice. (See *Truck Ins. Exchange v. Superior Court (Transco Syndicate)* (1997) 60 Cal.App.4th 342, 351 (*Truck Ins. Exchange*) ["timeliness is hardly a reason to bar intervention when a direct interest is demonstrated and the real parties in interest have not shown any prejudice other than being required to prove their case"]; see also *Kane County*, at p. 891 [motion to intervene filed three months after intervenor discovered its interest in the case was timely because there was no prejudice

or unusual circumstances]; *United States v. State of Oregon* (9th Cir. 1984) 745 F.2d 550, 552 [delay of at least eight months did not render motion to intervene untimely based on the stage of the proceedings and the lack of prejudice].)

In this case, the Labor Commissioner's delay in moving to intervene should be measured from April 22, 2019—the date Crestwood sent the arbitration order to the Commissioner—rather than February 25, 2019—the date Crestwood informed the Commissioner about its petition. In determining whether intervention is timely, courts "focus ' "on the date the person attempting to intervene should have been aware his interest[s] would no longer be protected adequately by the parties, rather than the date the person learned of the litigation." ' " (*Ziani, supra*, 243 Cal.App.4th at p. 281.) According to its own correspondence, Crestwood only informed the Commissioner on February 25 of its petition "to compel *Ms. Lacy* to arbitrate issues she asserted in" her retaliation complaint. (Italics added.) Crestwood did not tell the Commissioner that it was also seeking to stay *all* DLSE proceedings, including the investigation, and did not provide the Commissioner with a copy of its petition. Thus, the Commissioner had no reason to believe that the petition would affect her authority to investigate and act on the complaint under section 98.7 until she received the arbitration order from Crestwood on April 22.

Meanwhile, the other relevant date for measuring the delay should be July 31, 2019—the date the Labor Commissioner filed her ex parte application to intervene—rather than August 12, 2019—the date the Commissioner filed her intervention motion. Thus, the relevant delay for determining timeliness is 100 days—from April 22, 2019 to July 31, 2019.

9

Based on this delay, the factors heavily favor, if not compel, intervention. First, the stage of the proceedings strongly supports intervention. Indeed, there is no evidence in the record that an arbitration has even been initiated.

Second, neither Crestwood nor Lacy have suffered any prejudice from the delay. Crestwood identified no prejudice in its papers before the trial court, and the trial court cited none in its order denying the intervention motion. On appeal, Crestwood contends, for the first time, that it and Lacy would suffer prejudice because they would have to "relitigate the court's order granting Crestwood's petition." But this prejudice results from the fact of intervention—and not from the Commissioner's delay in seeking intervention. (See *Truck Ins. Exchange*, *supra*, 60 Cal.App.4th at p. 351; *Kane County*, *supra*, 928 F.3d at p. 891; *Smith*, *supra*, 830 F.3d at p. 857.)

Finally, contrary to Crestwood's assertion, the Labor Commissioner did provide an excuse for the delay—the large volume of complaints that she must investigate. (Cf. *Lloyd v. County of Los Angeles* (2009) 172 Cal.App.4th 320, 332 (*Lloyd*) [Legislature adopted Private Attorneys General Act of 2004 (PAGA) to allow employees to collect " '*civil penalties for violations of the Labor Code*'" as " '*private attorneys general*'" due to inadequate staffing of " 'state labor law enforcement agencies' "].) Even if this excuse is not satisfactory, the first two factors—particularly, the absence of prejudice—coupled with the relatively short length of the delay establish that the trial court abused its discretion in finding the intervention motion untimely. (See *Truck Ins. Exchange*, *supra*, 60 Cal.App.4th at pp. 350–351 [finding intervention timely in the absence of any prejudice]; *Kane County*, *supra*, 928 F.3d at p. 891 [reversing denial of motion to intervene for untimeliness due to lack of prejudice from three-month delay]; *Smith*, *supra*, 830 F.3d at pp. 859,

10

861 [observing that courts have found intervention motions timely based solely on the first two factors in the face of an eight-month delay].)

## C.

### *Impairment of Ability to Protect the Public Interest*

Crestwood contends the arbitration order did not impair or impede the Labor Commissioner's ability to protect the public interest because: (1) the order only delayed, but did not prevent, the Commissioner's investigation; (2) the Commissioner had already agreed to suspend her investigation; and (3) the arbitration policy superseded any DLSE proceedings on Lacy's retaliation complaint, including the Commissioner's investigation, under the Federal Arbitration Act (FAA). We disagree and find that the arbitration order impaired the Commissioner's ability to protect the public interest.

### 1.

### *Anti-Retaliation Provisions of the Labor Code*

"Section 98.6 prohibits retaliation, by discharge or other discrimination, against any employee for exercising rights protected by the Labor Code." (*American Corporate Security, Inc. v. Su* (2013) 220 Cal.App.4th 38, 43 (*American Corporate Security*).) Under section 98.7, subdivision (a)(1), "[a]ny person who believes that they have been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with the" DLSE "within one year after the occurrence of the violation." "A discrimination complaint investigator then investigates." (*American Corporate Security*, at p. 43; see § 98.7, subd (a)(1) ["The complaint shall be investigated by a discrimination complaint investigator in accordance with this section"].)

The Labor Commissioner, however, need not wait for an employee complaint. Instead, the DLSE "may, with or without receiving a complaint,

11

commence investigating an employer, in accordance with" section 98.7, "that it suspects to have discharged or otherwise discriminated against an individual in violation of any law under the jurisdiction of the Labor Commissioner." (§ 98.7, subd. (a)(2).)

An investigation of suspected retaliation has priority. (*American Corporate Security*, *supra*, 220 Cal.App.4th at p. 43.) "The investigation shall include, where appropriate, interviews with the complainant, respondent, and any witnesses who may have information concerning the alleged violation, and a review of any documents that may be relevant to the disposition of the complaint." (§ 98.7, subd. (b)(1).) "The Labor Commissioner may hold an investigative hearing whenever the Labor Commissioner determines that a hearing is necessary to fully establish the facts." (§ 98.7, subd. (b)(1).) At the hearing, both the complainant and respondent may present evidence. (*Ibid.*) Such hearings, however, are not required and are rarely held. (See *American Corporate Security*, at p. 45 ["Under section 98.7 . . . there is usually no hearing"]; see also *id.*, at p. 45, fn. 4 ["The Labor Commissioner's summary of procedures for retaliation and discrimination complaints indicates that only rarely will a hearing be held before the determination is made"].)

During its investigation, the Labor Commissioner may petition a court "for appropriate temporary or injunctive relief, or both temporary and preliminary injunctive relief" if she finds "reasonable cause to believe that any person has engaged in or is engaging in" retaliation in violation of the Labor Code. (§ 98.7, subd. (b)(2)(A).) This is independent of the complainant's right to petition for "temporary or preliminary injunctive relief." (§ 1102.61; see also § 1102.62.) In determining whether "temporary injunctive relief" is "just and proper," the court must consider not only the

"harm resulting directly to an individual from" the alleged retaliation, but also "the chilling effect on other employees asserting their rights" under the Labor Code. (§ 98.7, subd. (b)(2)(C); see also § 1102.61, subd. (b) [employee petition].) Any "temporary injunctive relief" ordered by the court remains "in effect" until the Commissioner has completed her investigation and decided on a course of action (§ 98.7, subd. (b)(2)(E); § 1102.62, subd. (d) [employee petition]), and is not "stayed pending appeal" (§ 98.7, subd. (b)(2)(F); see § 1102.62, subd. (f) [employee petition]).

Upon completing her investigation, the Labor Commissioner has three options. First, the Commissioner may determine that "no violation has occurred." (§ 98.7, subd. (d)(1).) After reaching this determination, the Commissioner must "notify the complainant and respondent" and "dismiss the complaint." (*Ibid.*) If the complainant disagrees with the Commissioner, she may still "bring an action in an appropriate court." (*Ibid.*)

Second, the Labor Commissioner may issue a determination that "a violation has occurred." (§ 98.7, subd. (c)(1).) If the Commissioner issues such a determination, she "shall notify the complainant and respondent and direct respondent to cease and desist from any violation and take any action deemed necessary to remedy the violation, including, where appropriate, rehiring or reinstatement, reimbursement of lost wages and interest thereon, payment of penalties, payment of reasonable attorney's fees associated with any hearing held by the Labor Commissioner in investigating the complaint, and the posting of notices to employees." (*Ibid.*) If the respondent does not comply within 30 days, the "Commissioner shall bring an action promptly in an appropriate court against the respondent." (*Ibid.*) If the "Commissioner fails to bring an action in court promptly, the complainant may bring an action against the Labor Commissioner in any appropriate court for a writ of

13

mandate to compel the Labor Commissioner to bring an action in court against the respondent." (*Ibid.*) The complainant may also "intervene as a party plaintiff" in any such action filed by the Commissioner. (*Ibid.*) If the Commissioner prevails in the action, it may recover her "attorney's fees." (§ 98.7, subd. (c)(2).)

Third, the Labor Commissioner may issue a citation if she "determines . . . that a violation has occurred." (§ 98.74, subd. (a); see § 98.7, subd. (c)(1).) The citation must "be in writing" and "describe the nature of the violation and the amount of wages and penalties due," as well as all other "appropriate relief." (§ 98.74, subd. (a).) "Appropriate relief includes directing the person cited to cease and desist from the violation and take any action necessary to remedy the violation, including, where appropriate, rehiring or reinstatement, reimbursement of lost wages and interest thereon, and posting notices to employees." (*Ibid.*)

If the person cited does not challenge the citation, then it becomes "final." (§ 98.74, subd. (b)(1).) The Commissioner must then file the citation with a court. (§ 98.74, subd. (b)(2).) The Commissioner may also petition the court for "an order to show cause why any injunctive or nonmonetary relief" described in the citation "should not be ordered." (*Ibid.*) Any judgment pursuant to the citation or the order to show cause must be entered "in favor of" or "for the state" and against the person cited. (*Ibid.*)

If the person cited wishes to challenge the citation, that person may request an "informal hearing" with the Labor Commissioner. (§ 98.74, subd. (b)(1).) The hearing officer must "issue a written decision" that includes "a statement of findings, conclusions of law, and an order." (§ 98.74, subd. (c).) The person cited may petition for review of that written decision by filing "a petition for writ of mandate . . . pursuant to Section 1094.5 of the

14

Code of Civil Procedure." (§ 98.74, subd. (d)(1).) "As a condition to filing" such a petition, however, the person must "first post a bond with the Labor Commissioner equal to the total amount of any penalties, lost wages and interest thereon, liquidated damages, and any other monetary relief that are due and owing as determined" by the hearing officer. (§ 98.74, subd. (d)(2).) If the person does not post a bond or file a petition or if the petition "is dismissed or withdrawn without entry of judgment," the Commissioner may submit the written decision and order to a court. (§ 98.74, subd. (d)(4).) That court must then "enter judgment for the state against" the person cited "in the total monetary amount shown on the" order. (*Ibid.*)

Finally, "the rights and remedies provided by" section 98.7 "do not preclude an employee from pursuing any other rights and remedies under any other law." (§ 98.7, subd. (f).) Thus, an employee need not file a retaliation complaint with the Labor Commissioner before "filing suit for Labor Code violations." (*Lloyd, supra,* 172 Cal.App.4th at p. 332.)

2.

*Impairment from Delay of the Investigation*

As a threshold matter, the arbitration order, by delaying the Labor Commissioner's investigation, impaired her ability to vindicate the public interest "in protecting the rights of individual employees and job applicants who could not otherwise afford to protect themselves." (Stats. 2001, ch. 820, § 1.) For example, the order prevents the Commissioner from obtaining "temporary or preliminary injunctive relief" before Lacy's retaliation complaint is resolved by the arbitration. (§ 98.7, subd. (b)(2)(A).) This alone is sufficient to establish impairment.

In any event, delaying the Commissioner's investigation contravenes the very purpose behind the anti-retaliation provisions of the Labor Code.

15

The Legislature adopted these provisions "to bring about a more timely resolution" of retaliation complaints by the Commissioner because "[t]his timeliness will not only bring justice to the aggrieved worker, it will also counter the chilling effect that justice delayed has on other workers' willingness to exercise their legal rights." (Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 306 (2017-2018 Reg. Sess.) as amended Sept. 8, 2017, p. 3; see Assem. Com. on Jud., Analysis of Sen. Bill No. 229 (2019-2020 Reg. Sess.) as amended Mar. 18, 2019, p. 3 ["the bill seeks to realize the intent of the author's SB 306, which sought to ensure that workers subject to retaliation obtain any appropriate remedy in a timely manner, since 'justice delayed is justice denied' "].) By staying the Commissioner's investigation pending the arbitration, the arbitration order prevents the Commissioner from taking action indefinitely. Indeed, the order may, as a practical matter, bar the Commissioner from ever acting on Lacy's complaint because Lacy has not initiated and may never initiate an arbitration. As a result, the arbitration order necessarily impairs the ability of the Commissioner to protect the public interest.

That the Labor Commissioner may have agreed to suspend its investigation temporarily in this case does not alter this conclusion. The Commissioner only agreed to suspend her investigation *pending the resolution of the petition by the trial court*. Thus, when the Commissioner moved to intervene, she had no longer agreed to suspend her investigation. In any event, even if that agreement had remained in effect, the arbitration order still impaired the Commissioner's ability to protect the public interest because it prevented her from changing her mind and exercising her independent statutory authority under section 98.7.

16

*FAA Preemption of the Commissioner's Investigation*

Crestwood also contends the arbitration order did not impair or impede the Labor Commissioner's ability to protect the public interest because the FAA supersedes any proceedings established by sections 98.7 and 98.74 for resolving Lacy's retaliation complaint. The Commissioner counters that the arbitration policy did not displace her independent statutory authority to investigate and prosecute violations of the Labor Code. We agree with the Commissioner and find that the FAA does not prevent the Commissioner from investigating the retaliation complaint, seeking interim relief, or issuing a determination under section 98.7.

The FAA—which covers all "[e]mployment contracts, except for those covering workers engaged in transportation" (*Waffle House*, *supra*, 534 U.S. at p. 289)—" 'declare[s] a national policy favoring arbitration' of claims that parties contract to settle in that manner" (*Preston*, *supra*, 552 U.S. at p. 353). To effectuate this policy, the FAA "provides for stays of proceedings in . . . courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." (*Waffle House*, at p. 289.) Nothing in the FAA, however, "authorizes a court to compel arbitration . . . by any parties[] that are not already covered in the agreement." (*Waffle House*, at p. 289.) Nor does the FAA "mention enforcement by public agencies." (*Waffle House*, at p. 289.)

Applying these principles, the United States Supreme Court in *Waffle House* held that the FAA did not prevent the federal Equal Employment Opportunity Commission (EEOC) "from pursuing victim-specific judicial relief, such as backpay, reinstatement, and damages, in an enforcement

17

action" even though the victim entered into an arbitration agreement with his employer. (*Waffle House, supra*, 534 U.S. at p. 282.) Under Title VII of the Civil Rights Act of 1964, the EEOC has "the authority to investigate and, if possible, to conciliate charges of discrimination" filed by employees against their employers. (*Waffle House*, at p. 286.) The EEOC may also file suit "on its own." (*Id.* at p. 291.) "[A]lthough the employee may intervene in the EEOC's suit," the EEOC may bring that suit "even after the employee has disavowed any desire to seek relief." (*Ibid.*) Thus, the EEOC has independent statutory authority "to pursue victim-specific relief regardless of the forum that the employer and employee have chosen to resolve their disputes." (*Id.* at p. 295.) Because the EEOC was not a party to the arbitration agreement, the high court concluded that the FAA did "not require the agency to relinquish its statutory authority if it has not agreed to do so." (*Waffle House*, at p. 294.)

Six years later, the United States Supreme Court distinguished *Waffle House*. In *Preston*, the petitioner sought to arbitrate a contract dispute with the respondent. In response, the respondent invoked an administrative remedy, asking the Labor Commissioner to invalidate the contract under the California Talent Agencies Act (TAA). (*Preston, supra*, 552 U.S. at p. 350.) In holding that the FAA preempted that administrative proceeding under the TAA, the high court found *Waffle House* inapplicable. (*Preston*, at p. 359.) According to the court, the Commissioner in the TAA proceeding "functions not as an advocate advancing a cause before a tribunal authorized to find the facts and apply the law; instead, the Commissioner serves as impartial arbiter." (*Preston*, at p. 359.) By contrast, the EEOC in *Waffle House* acted "not as adjudicator but as prosecutor, pursuing an enforcement action in its own name or reviewing a discrimination charge to determine whether to

18

initiate judicial proceedings." (*Preston*, at p. 359.)  Consistent with this distinction, the high court made clear that "[e]nforcement of the parties' arbitration agreement in this case does not displace any independent authority the Labor Commissioner may have to investigate and rectify violations of the TAA."  (*Preston*, at p. 359, fn. 7.)

Since *Waffle House* and *Preston*, the California Supreme Court has applied this distinction when determining whether the FAA supersedes a proceeding authorized by the Labor Code.  For example, in *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 682, our state high court held that an arbitration agreement restricting the contracting parties "from submitting their claims for adjudication to an administrative entity such as the Labor Commissioner" did not render the agreement "unconscionable or unenforceable."

More recently, the California Supreme Court applied this distinction in holding that "the FAA preempts our state-law rule categorically prohibiting waiver of a Berman hearing in a predispute arbitration agreement imposed on an employee as a condition of employment."  (*Sonic II*, *supra*, 57 Cal.4th at p. 1124.)  A Berman hearing is "a dispute resolution forum established by the Legislature to assist employees in recovering wages owed."  (*Ibid.*)  It is codified in sections 98 to 98.2 and is named "after its legislative sponsor." (*American Corporate Security*, *supra*, 220 Cal.App.4th at p. 45.)

To obtain relief through a Berman hearing, an employee must file a written "complaint or claim for wages, penalties or other demand for compensation" with the Labor Commissioner.  (Cal. Code Regs., tit. 8, §§ 13501 & 13501.5.)  The Commissioner "may either accept the matter and conduct a Berman hearing (§ 98, subd. (a)); prosecute a civil action on the

19

employee's behalf (§ 98.3); or take 'no further action . . . on the complaint.' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 121 (*OTO*).)

If the Commissioner opts to conduct a Berman hearing, then she must hold that hearing within 90 days from the date she decides to do so. (§ 98, subd. (a).) " '[T]he pleadings are limited to a complaint and an answer; . . . and there is no discovery process.' " (*American Corporate Security*, *supra*, 220 Cal.App.4th at p. 45.) The hearing is "presided over by a Deputy Labor Commissioner" (Cal. Code Regs., tit. 8, § 13502), who has subpoena power (*id.*, § 13506). During the hearing, "[e]ach party shall have the right to call and examine witnesses; to introduce exhibits; to cross-examine opposing witnesses[,] . . . to impeach any witness . . .; and to rebut the evidence against him (her)." (*Id.*, § 13505). The Commissioner must decide the employee's claim within 15 days after the hearing (§ 98.1), and either the employee or employer may seek review of the Commissioner's decision "by filing an appeal to the superior court, where the appeal shall be heard de novo" (§ 98.2, subd. (a)). The employer must, however, "post an undertaking" "[a]s a condition to filing [such] an appeal." (§ 98.2, subd. (b).) If the appealing party loses, then that party must pay the other party's "costs and reasonable attorney's fees." (§ 98.2, subd. (c).) "An employee is successful if the court awards an amount greater than zero." (*Ibid.*) Finally, the "Commissioner shall make every reasonable effort to ensure that judgments are satisfied, including taking all appropriate legal action and requiring the employer to deposit a bond as provided in Section 240." (§ 98.2, subd. (j).)

Thus, under the Berman hearing process, the Labor Commissioner acts as the adjudicator—and not as a prosecutor. As our high court explained, "the Berman hearing itself provides an accessible, informal, and affordable mechanism for *laypersons* to seek resolution of" their wage claims. (*Sonic II*,

20

*supra*, 57 Cal.4th at p. 1129, italics added.)  Indeed, the Commissioner is *not* a party in any de novo appeal from the hearing decision and has no authority to appeal that decision.  Instead, the Commissioner only has the authority to represent the employee "claimant" in the appeal.[3]  (§ 98.4, subd. (a).)  Because the Commissioner acts primarily as an adjudicator in the Berman hearing process, the California Supreme Court concluded in *Sonic II* that the FAA preempts that administrative process.  (See *Sonic II*, at p. 1142 [holding that the FAA does not permit "additional delay that results from . . . an administrative scheme [like the Berman hearing process] to effectuate state policies unrelated to the agreement's enforceability"].)

By contrast, the California Supreme Court refused to enforce an arbitration agreement under the FAA when the employee is "enforcing our labor laws on behalf of state law enforcement agencies." (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 388 (*Iskanian*).)  In *Iskanian*, our state high court considered whether the FAA restricts the ability of an employee to pursue a representative PAGA claim.  (See *Iskanian*, at pp. 359, 360.)  Under PAGA, an "aggrieved employee" may bring an action personally and on behalf of current or former employees to recover civil penalties against his or her employer for Labor Code violations.  (§ 2699, subd. (a).)  Such an action "functions as a substitute for an action by the government itself" and " 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties.' " (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986.)  Because an employee asserting a PAGA claim is a "statutorily designated proxy for the agency as when the claim is

_____

[3] Section 98.4, subdivisions (b) and (c) also allow the Labor Commissioner to represent the employee "claimant" in the arbitration of her wage claim.

brought by the agency itself," our state high court concluded that the FAA does not prevent the employee from pursuing the PAGA claim even though he entered into an arbitration agreement with his employer. (*Iskanian*, at pp. 388–389.) "Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents . . . that the employer has violated the Labor Code." (*Iskanian*, at pp. 386–387.)

Thus, whether the FAA displaces our Labor Code in this case depends on whether the Labor Commissioner acts as a prosecutor or an adjudicator when she investigates and acts on a retaliation complaint pursuant to sections 98.7 and 98.74. If the Commissioner is acting as a prosecutor on behalf of the state, then the FAA is inapplicable and does not prevent the Commissioner from investigating and acting on the retaliation complaint. If the Commissioner is acting as an adjudicator, then the FAA applies and supersedes any Labor Code proceeding on the complaint. Applying this distinction, we conclude that the Commissioner, at a minimum, acts as a prosecutor when she investigates a retaliation complaint, seeks temporary or preliminary injunctive relief (interim relief process), or issues a determination (determination process) under section 98.7. As a result, the FAA does not prevent the Commissioner from taking any of those actions on Lacy's retaliation complaint. (*Preston*, *supra*, 552 U.S. at p. 359, fn. 7.)

In reaching this conclusion, we initially note that the authority of the Labor Commissioner to investigate suspected retaliation and seek interim relief does not depend on the actions of the employee. The Commissioner may "commence investigating an employer" for retaliation "with or without" an employee complaint. (§ 98.7, subd. (a)(2).) The Commissioner may also

22

"petition the superior court" for "temporary or preliminary injunctive relief" (§ 98.7, subd. (b)(2)), regardless of whether the employee seeks such relief (§ 1102.61). Together, these provisions establish that the Commissioner "is in command of the process" for investigating suspected retaliation and seeking interim relief (*Waffle House*, *supra*, 534 U.S. at p. 291), and has the exclusive authority "to determine whether public resources should be committed to" investigating or obtaining that relief (*id.* at pp. 280, 291–292).

The same is true when the Labor Commissioner issues a determination. If the Commissioner determines that no violation has occurred, then the employee may file a lawsuit but has no right to challenge that determination. (§ 98.7, subd. (d)(1).) If the Commissioner determines that a violation has occurred and if the employer refuses to abide by that determination, then "the burden is on the Labor Commissioner to enforce" it "by bringing an action" in court. (*American Corporate Security*, *supra*, 220 Cal.App.4th at p. 46; see § 98.7, subd. (c)(1).) That the action is brought by the Commissioner as a prosecutor on behalf of the state is apparent from the Labor Code—which makes it clear that the employee has no independent right to enforce the determination. Instead, the employee may only "intervene as a party plaintiff" or seek a "writ of mandate to compel the" Commissioner "to bring an action" to enforce the determination. (§ 98.7, subd. (c)(1).) Section 98.7, subdivision (c)(2) further provides that the Commissioner may recover "the reasonable attorney's fees incurred by" her in "*prosecuting* the enforcement action." (Italics added.)

Thus, the determination process "confers on the" Commissioner "the authority to evaluate the strength of the public interest at stake" and authorizes the Commissioner "to proceed in a judicial forum" if she determines that it is justified by the public interest. (*Waffle House*, *supra*,

23

534 U.S. at pp. 291–292.) In this respect, the determination process is no different than the EEOC process in *Waffle House*. (See *id*. at p. 286.) Consequently, "the proarbitration policy goals of the FAA do not require the" Commissioner "to relinquish [her] statutory authority" to issue and enforce the determination if she "has not agreed to do so." (*Waffle House*, at p. 294; see *Preston, supra*, 552 U.S. at p. 359 & fn. 7 [FAA does not supersede an agency's authority to act "as a prosecutor, pursuing an enforcement action in its own name or reviewing a discrimination charge to determine whether to initiate judicial proceedings"].)

Whether the same is true when the Labor Commissioner issues a citation is not as clear. Unlike the determination process, the citation process does not require the Commissioner to decide whether to proceed in an administrative or judicial forum. Instead, the employer has the burden of challenging the citation by seeking an "informal hearing" before the Commissioner (§ 98.74, subd. (b)) or by petitioning the superior court for a writ of mandate under Code of Civil Procedure section 1094.5 (§ 98.74, subd. (d).) When the Commissioner issues and enforces the citation, she is arguably acting as a prosecutor. (See *Alternate Fuels, Inc. v. Cabanas* (W.D.Mo. Nov. 10, 2004, Civ. A. No. 02-01182-cv-w-JTM) 2004 U.S.Dist. LEXIS 33454, *13 ["in many regulatory settings," the "decision to issue a citation, in fact, is a decision to prosecute"], affirmed and remanded on other grounds by (2006) 435 F.3d 855; § 98.74, subd. (b)(2) [judgment entered pursuant to citation is "in favor of" or "for the state"].) But when the Commissioner makes a decision after the "informal hearing," she is undoubtedly acting as an impartial adjudicator. Moreover, the Commissioner, unlike the "person issued a citation," has no authority to seek review of the hearing decision. (§ 98.74, subd. (d)(1).) Thus, the

24

Commissioner appears to perform both prosecutorial and adjudicative functions during the citation process. We need not, however, decide whether this process is more like the processes in *Waffle House* or *Preston*. This is because the FAA does not prevent the Commissioner from exercising her independent statutory authority to investigate a retaliation complaint, seek interim relief, or issue a determination. (See *ante*, at pp. 23–24.) Thus, the arbitration order, by preventing the Commissioner from taking those actions indefinitely, impairs her ability to vindicate the public interest regardless of whether the FAA supersedes the citation process.

This conclusion is bolstered by decisions from other state and federal courts. Those courts have concluded that the FAA does not displace the authority of a state or local agency to investigate and obtain victim-specific relief under a state or local statutory scheme analogous to section 98.7.

For example, in *Joulé, Inc. v. Simmons* (2011) 459 Mass. 88, 93 (*Joulé*), the Massachusetts Supreme Court held that the FAA did not preempt a state law authorizing a state agency to investigate and resolve an employee's discrimination complaint. Under that state law, the Massachusetts Commission Against Discrimination (MCAD) must investigate an employee's complaint of discrimination and either dismiss the complaint or attempt conciliation to " 'eliminate the unlawful practice.' " (*Joulé*, at p. 93.) If conciliation is unsuccessful, then the MCAD may issue a complaint in its own name that is heard by "an MCAD commissioner other than the investigating commissioner, or by a designated hearing officer, or by the full commission." (*Id.* at p. 94.) That complaint may be prosecuted by the MCAD or the employee's "attorney whom the MCAD has designated its agent for the purpose." (*Ibid.*) The employee may also "intervene as a party." (*Ibid.*)

25

Following the hearing, the MCAD may require the employer to " 'cease and desist from' " any unlawful practices and order victim-specific relief. (*Ibid.*)

Comparing this process to the EEOC process in *Waffle House*, the Massachusetts Supreme Court held that the FAA did not preempt the MCAD process "notwithstanding" the arbitration agreement between the employee and employer. (*Joulé*, *supra*, 459 Mass. at p. 99.) According to the court, the MCAD, like the EEOC, has "the power to investigate" and "pursue complaints filed by individuals . . . in its own name." (*Id.*, at p. 93.) Because the MCAD "has not agreed to arbitration of" the employee's "MCAD complaint," the court concluded that the FAA does not preclude "the MCAD from proceeding with its investigation and resolution of" that complaint— "including . . . granting relief specific to" the employee. (*Joulé*, at p. 95.)

Similarly, the Iowa Supreme Court held that the FAA did not bar the Iowa Civil Rights Commission (ICRC) from pursuing an administrative enforcement action based on an employee's discrimination complaint. (*Rent-A-Center, Inc. v. Iowa Civil Rights Com.* (Iowa 2014) 843 N.W.2d 727, 728 (*Rent-A-Center*).) Under Iowa law, both an employee and the ICRC may initiate a discrimination complaint that the ICRC staff must investigate. (*Id.* at p. 731.) If the ICRC staff, with the concurrence of an administrative law judge, finds "probable cause to believe a discriminatory practice has occurred," then the ICRC engages in a conciliation process with the employer. (*Ibid.*) If that process does not resolve the complaint, then the ICRC may file charges in its own name that the employer must answer "at an administrative hearing." (*Ibid.*) Following that hearing, the ICRC may order victim-specific relief. (*Id.* at pp. 731–732.)

Applying the reasoning of *Joulé*, the Iowa Supreme Court held that the arbitration agreement between the employee and employer did not " 'displace

26

any independent authority' the ICRC has 'to investigate and rectify violations' of the" Iowa Civil Rights Act. (*Rent-A-Center*, *supra*, 843 N.W.2d at p. 741.) In so holding, the court concluded that *Waffle House*, and not *Preston*, controlled (*Rent-A-Center*, at pp. 735–736, 737), because of the "considerable similarities" between the EEOC process in *Waffle House* and the ICRC enforcement process (*Rent-A-Center*, at p. 734). According to the court, *Preston* was inapposite because the ICRC "is not only a forum"; it is also "a public agency acting in its prosecutorial capacity to bring an enforcement action," independent of the employee's actions, "to protect the public interest under the Iowa Civil Rights Act." (*Rent-A-Center*, at p. 737.)

More recently, two federal district courts have followed the reasoning of *Joulé* and *Rent-A-Center*. In *SBM Site Serv., LLC. v. Alvarez* (D.Neb. Jan. 19, 2018, No. 4:17CV3028) 2018 U.S.Dist. LEXIS 19990, *12 (*SBM*), the federal court held that the FAA did not bar the Lincoln Commission on Human Rights (LCHR) from pursuing an administrative enforcement action based on an employee's discrimination claim even though the employee had agreed to arbitrate that claim. Because LCHR brought the action in its own name "to advance the City of Lincoln's interest in preventing employment discrimination," the court held that "[t]he LCHR's pursuit of victim-specific relief does not transform the enforcement proceeding into one brought directly by" the employee. (*SBM*, at p. *12.)

Similarly, the federal court in *Charter Communications, Inc. v. Derfert* (W.D.N.Y. 2021) 510 F.Supp.3d 8, 19 (*Charter Communications I*), held that the FAA does not displace an administrative hearing on an employee's discrimination complaint initiated and conducted by the New York State Division of Human Rights (NYSDHR). Finding that the NYSDHR "performs both prosecutorial and adjudicative functions," the court nonetheless

27

concluded that "this case is more like *Waffle House* than like *Preston*" (*Charter Communications I*, at p. 16), even though the only complaint was the one filed by the employee (*id.* at p. 19). According to the court, this is because of the similarities in "the role of the EEOC and" NYSDHR "in enforcing civil rights protections by recovering 'make whole' damages for individual employees, the broad authority conferred upon both agencies to investigate and address particular violations, and the role of both agencies as advocates before a neutral forum." (*Charter Communications, Inc. v. Derfert* (W.D.N.Y. Mar. 12, 2021, No. 1:20-cv-915) 2021 U.S.Dist. LEXIS 47241, *20 (*Charter Communications II*).)

The determination process under section 98.7 is not materially different from the processes considered in the above cases. Like the agencies in those cases, the Labor Commissioner may investigate and act on her own without an employee complaint. (Compare § 98.7, subd. (a)(2) with *Rent-A-Center*, *supra*, 843 N.W.2d at p. 731 [ICRC "may initiate a complaint"]; *Charter Communications I*, *supra*, 510 F.Supp.3d at p. 17 [NYSDHR may file a complaint "on its own motion"].) Similarly, the Commissioner may, in her sole discretion, issue a determination against an employer requiring a court action to enforce it. (Compare § 98.7, subds. (a)(2) & (c)(1) with *Joulé*, *supra*, 459 Mass. at pp. 93–94 [MCAD has discretion to issue complaint to be heard in a "public hearing"]; *Rent-A-Center*, at p. 731 [ICRC "may issue notice of charges" that must be answered by the employer "at an administrative hearing"]; *SBM*, *supra*, 2018 U.S.Dist. LEXIS 19990 at p. *10 [LCHR has discretion to cause charges to be issued requiring the employer to respond at an administrative hearing].) The Commissioner is the party plaintiff in that action, although the employee may intervene. (Compare § 98.7, subd. (c)(1) with *Joulé*, at pp. 93, 98 [MCAD "proceeds in its own name" although the

28

employee may "request to intervene"]; *SBM*, at p. *12 [Although the charge is brought " 'on behalf of' " the employee, it is "brought *in the name* of the LCHR"]; see also *Waffle House*, *supra*, 534 U.S. at p. 291 [EEOC may pursue action on its own even though the employee may intervene].)  Thus, the Commissioner, and not the employee, controls the action.  (See *Rent-A-Center*, at p. 735 ["once . . . the ICRC initiates proceedings, the agency, not the complainant, is the 'master of its own case' and determines the course of the case"]; *SBM*, at p.*15 [complainant cannot "prevent the LCHR from moving forward with its proceedings"]; *Charter Communications II*, *supra*, 2021 U.S.Dist. LEXIS 47241, at p.*23 ["although the complainant is one of the parties to the proceeding," the NYSDHR "is 'in command' of the administrative process"].)  Given these similarities, we reach the same conclusion reached by these other state and federal courts: the FAA does not supersede the determination process under section 98.7.

In reaching this conclusion, we find the fact that the Labor Commissioner is a state, rather than a federal, agency to be immaterial.  As the Iowa Supreme Court explained, "[t]he essential point of *Waffle House* is that the FAA's reach does not extend to a public agency that is neither a party to an arbitration agreement nor a stand-in for a party."  (*Rent-A-Center*, *supra*, 843 N.W.2d at p. 736.)  In any event, our state high court has already extended *Waffle House* to enforcement actions by state agencies.  (See *Iskanian*, *supra*, 59 Cal.4th at pp. 386–387.)

Crestwood's attempt to analogize the interim relief and determination processes established by section 98.7 to the Berman hearing process established by section 98.2 is unavailing.  "[S]ection 98.2 and section 98.7 provide for very different procedures."  (*American Corporate Security*, *supra*, 220 Cal.App.4th at p. 45.)  For example, although the Labor Commissioner

may represent the employee in the Berman hearing process (§ 98.4), she is not a party. By contrast, the Commissioner, and not the employee, is the party plaintiff in a court action seeking interim relief or enforcing a determination (§ 98.7, subds. (b)(2)(A) & (c)(1); see *id.*, subd. (c)(1) [employee may "intervene as a party plaintiff"].) Thus, unlike the Berman hearing process in which the employee controls the litigation, the Commissioner "is in command of" the interim relief and determination processes under section 98.7. (*Waffle House*, *supra*, 534 U.S. at p. 291.) And in exercising that command, the Commissioner is acting as a prosecutor to vindicate the public interest. Because the Commissioner is not a party to the arbitration agreement, the FAA simply does not apply. (See *Preston*, *supra*, 552 U.S. at p. 359, fn. 7.)

That the Labor Commissioner may hold "an investigative hearing" as part of the determination process does not compel a contrary conclusion. (§ 98.7, subd. (b)(1).) Unlike the Berman hearing—which is a prerequisite for relief from the Commissioner—a hearing is not required in the determination process and, in fact, "rarely" occurs. (*American Corporate Security*, *supra*, 220 Cal.App.4th at p. 45 & fn. 4.) Although the Commissioner may hold that hearing as part of the determination process, she may only use it "to establish the facts." (§ 98.2, subd. (b)(1).) Thus, the hearing serves an "investigatory" purpose analogous to discovery, rather than an adjudicatory one. (*Ibid.*) This conclusion is reinforced by the fact that a determination "does not become 'final'" without further action by the "Commissioner." (*American Corporate Security*, at p. 45.) Indeed, the Commissioner has the "burden" of enforcing the determination "by bringing an action" in court. (*Id.* at p. 46.) *Sonic II* and *OTO*—which only considered the Berman hearing

30

process—do not therefore apply. (*OTO*, *supra*, 8 Cal.5th at p. 118 [addressing Berman hearing only]; *Sonic II*, *supra*, 57 Cal.4th at p. 1124 [same].)

Finally, the legislative history of the 2017 and 2019 amendments to the Labor Code does not suggest otherwise. In 2017, the Legislature added, among other things, the citation process found in section 98.74. (See Stats.2017, ch. 460, § 2 [adding § 98.74].) And in 2019, the Legislature amended that citation process. (See Stats.2019, ch. 721, § 1 [amending § 98.74].) In describing this new citation process, the Senate Judiciary Committee claimed that it "mirror[ed] the existing procedures in the wage claim context," such as the Berman hearing process "found in Labor Code [sections] 98, 98.1 and 98.2." (Sen. Jud. Com., Analysis of Sen. Bill No. 229 (2019-2020 Reg. Sess.) Mar. 28, 2019, p. 4; see also Sen. Com. on Appropriations, Analysis of Sen. Bill No. 306 (2017–2018 Reg. Sess.) Apr. 4, 2017, pp. 2–3 [by adding the citation process, "[t]his bill would permit the Labor Commissioner to conduct hearings on retaliation claims similar to the process for unpaid wage claims, including a potential appeal process to an appropriate superior court"].) That legislative history, however, made no such claim for the interim relief and determination processes found in section 98.7.[4] Thus, even if the 2017 and 2019 legislative history suggests that the citation process is analogous to the Berman hearing process, it says nothing about the interim relief or determination processes under section 98.7.

Accordingly, the arbitration policy does not displace the independent statutory authority of the Labor Commissioner to investigate Lacy's

---

[4] This omission is understandable. The determination process existed before 2017, and the Legislature made no changes to that process in 2017 and 2019. (See Stats.2019, ch. 721, § 1; Stats.2017, ch. 460, § 2.) And interim relief is not available in the Berman hearing process. (Compare § 98.7, subd. (b)(2) with §§ 98–98.2).

retaliation complaint, seek interim relief, or issue a determination. Because the arbitration order prevents the Commissioner from exercising this authority indefinitely, it necessarily impairs the ability of the Commissioner to protect the public interest. The denial of the intervention motion is therefore reversed.

## III.

### The Motion to Vacate

Because it denied the intervention motion, the trial court took the Labor Commissioner's motion to vacate "off calendar as moot." In doing so, the court, in effect, denied that motion. Because we reverse the denial of the intervention motion, we reverse the denial of the motion to vacate. On remand, the trial court should consider whether the arbitration order should be vacated in whole or in part in light of this opinion.

### DISPOSITION

The September 11, 2019 Order Denying Labor Commissioner's Motion for Leave to Intervene and the September 17, 2019 Order Deeming Labor Commissioner's Motion to Vacate and in the Alternative for Reconsideration Moot are reversed. The matter is remanded for proceedings consistent with the views expressed in this opinion. The Labor Commissioner is entitled to recover her costs on appeal.

_____

                                                    Chou, J.*

WE CONCUR:


_____

Tucher, P. J.


_____

Petrou, J.


A158830


* Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**Crestwood Behavioral Health, Inc. v. Lacy**

(A158830)

Trial Court:               San Mateo County Superior Court

Trial Judge:             Hon. Ethan P. Schulman

Attorneys:

State of CA, Dept. of Industrial Relations, Division of Labor Standards Enforcement, Miles E. Locker, Phoebe P. Liu, and Adalberto Corres for Appellant.

Littler Mendelson, Jennifer J. Walt and Bianca Rodriguez for Plaintiff and Respondent.